## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROSETTA GRATE,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.**   CIV-16-412-R |
| | ) |
| **THE CITY OF OKLAHOMA CITY, a municipal** | ) |
| **corporation, DANIEL HOLTZCLAW, BILL** | ) |
| **CITTY, BRIAN BENNETT, ROCKY GREGORY,** | ) |
| **JOHN AND JANE DOES** | ) |
| **All in their individual capacity** | ) |
| **Defendants.** | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff, Rosetta R. Grate ("Plaintiff" or "Grate"), by and through her attorney, Nkem A. House of Rhone & House, P.A., for her causes of action against Defendants, hereby alleges and states and follow:

## INTRODUCTION

This is a civil rights action seeking damages from individual police officers and from the City of Oklahoma City, Oklahoma for violations of Plaintiff's fourth and fourteenth Amendment rights under the United States Constitution, federal statutory rights under 42 U.S.C. §§1983 and 1985.3, the Oklahoma Constitution under art. II § 30, and the Oklahoma Governmental Tort Claims Act at 51 O.S. § 151 in connection with the unlawful force, stop,

arrest, search and physical and sexual assault against Plaintiff.  Plaintiff is one

several African-American women who were illegally and unlawfully stalked,

stopped, arrested, and physically and sexually assaulted.  Defendant, Daniel

Holtzclaw ("Holtzclaw"), was found guilty and sentence to two hundred sixty

three (263) years in prison for his actions and his crimes have prompted

nation public outrage and ongoing extensive international media coverage.

Plaintiff seeks by means of this civil rights action to hold accountable those

responsible for the unlawful force, stops, arrests, searches, and physical and

sexual assault Plaintiff suffered and to challenge Defendants' unconstitutional

practices.  Accordingly, this civil rights action is firmly in the public interest.

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Rosetta Grate, at all times relevant to the claims alleged

herein, was a citizen of the State of Oklahoma and a resident of Oklahoma

County, Oklahoma City, Oklahoma.

2.      Defendant Holtzclaw, at all relevant times to the claims alleged

herein, was a citizen of the State of Oklahoma and a commissioned law

enforcement officer employed by the city of Oklahoma City, Oklahoma with

the authority to act under the color of Oklahoma law to make arrests, and

otherwise enforce the laws of the City of Oklahoma City and the State of

Oklahoma.

3.      Defendant Bill Citty ("Citty"), at all relevant times to the claims alleged herein, was a citizen of the State of Oklahoma and Chief of Police for the city of Oklahoma City, Oklahoma, and is the final policy maker for the OKC Police Department, with the authority to hire, train, supervise, and discipline the officers under his command.

4.      Defendant Brian Bennett, , at all relevant times to the claims alleged herein, was a citizen of the State of Oklahoma and was employed by the city of Oklahoma City, Oklahoma, where he supervised Holtzclaw and otherwise acted under the authority and color of Oklahoma law.

5.      Defendant Rocky Gregory, , at all relevant times to the claims alleged herein, was a citizen of the State of Oklahoma and was employed by the city of Oklahoma City, Oklahoma, where he investigated sex crimes and otherwise acted under the authority and color of Oklahoma law.

6.      Defendant City of Oklahoma City ("OKC"), is a municipal corporation located within the State of Oklahoma and existing by virtue of the laws, Constitution, and statutes thereof.  At all relevant times to the claims alleged herein, OKC was the employer of Defendants, Holtzclaw, Citty, Bennett, Gregory, and John and Jane Does.

7.      Defendants John and Jane Does, in their individual capacities, at all relevant times to the claims alleged herein, were employed by OKC.  John and Jane Does were directly involved in the hiring, training, monitoring,

observing, supervising, disciplining, retaining, and/or controlling Defendant Holtzclaw.

## STATEMENT OF THE CASE

8.    On December 10, 2015, former Oklahoma City Police Department (OCPD") officer Holtzclaw was found guilty on multiple counts of rape, sexual battery, lewd acts, and oral sodomy, perpetrated against poor, disenfranchised African-American women.  All of the women were attacked in the predominately African-American neighborhoods of Northeast Oklahoma City, Oklahoma. On January 21, 2016, Holtzclaw was sentenced to 263 years as punishment for his heinous crimes.

9.    Holtzclaw's actions were part of a common pattern and practice of sexually assaulting African-American females whom he identified as vulnerable to his sexual abuse and whom he believed would either be reluctant or unwilling to come forward or who would not be believed if they did come forward.

10.    The danger of sexual assault by police officers is well known and has been the subject of papers and studies by the International Association of Chiefs of Police, of which the OCPD is a member.

11.    Plaintiff is one of at least fourteen women attacked by Holtzclaw and, on information and belief, at the time of Plaintiff's illegal detention, arrest, and physical and sexual assault, Defendants OKC, Citty, Bennett,

Gregory and others knew or had reason to know that Holtzclaw had a pattern, practice and custom of illegally detaining, arresting, and committing physical and sexual assaults, battery and intimidation against African-American citizens under the protection of OKC and the OCPD through the misuse of his position as a police officer, yet showed deliberate indifference to the threat that Holtzclaw posed to the predominately African-American community that the aforementioned Defendants assigned Holtzclaw to patrol.

12.     Defendants, acting under the color of state law, deprived Plaintiff of her constitutional right to bodily integrity.

13.     Defendants should have been monitoring Holtzclaw's conduct and had knowledge of the activities because citizens had publicly accused or reported to OKC that Holtzclaw was using or participating in unlawful force, stops, arrests, and searches and/or sexual assaults against African-Americans before Holtzclaw's attack on Plaintiff Grate as follows:

   a.  Holtzclaw caused the death of Clifton Darnell Armstrong ("Armstrong"), an African-American male resident of Oklahoma City, Oklahoma on or about May 1, 2013. Specifically, Holtzclaw unnecessarily attacked, beat, hog-tied, and obstructed Armstrong's ability to breathe resulting in his death. Armstrong's death resulted in a tort claim notice on or about July 13, 2013, and a lawsuit which was filed on or

about April 2, 2014.  The tort claim notice was pending at the time of Holtzclaw's assaults on the Plaintiff herein.  Such notice warranted Holtzclaw being removed from his duties patrolling the street or at least given close scrutiny and monitoring.

b.  On or about November 5, 2013, Defendants were notified Defendant Holtzclaw illegally detained, arrested, victimized by unlawful force, and sexually assaulted an African-American female named Demetria M. Campbell ("Campbell"), without provocation, probable cause or justification[1]

  i.  Campbell was in Oklahoma City, Oklahoma visiting her daughter who was receiving treatment at Oklahoma University Medical Center Hospital ("OU Medical Center") for terminal cancer.  At the request of her terminally ill daughter, Campbell left the hospital to purchase a fish dinner at a local establishment, TJ's Seafood Restaurant, located on the predominately African American Northeast side of Oklahoma City.

---

[1] In their *Answer to Defendants City of Oklahoma City to Plaintiff's Amended Petition* in Ligons v. Holtzclaw, et al., CIV-15-1112-HE, Defendant Oklahoma City admits that it received Campbell's November 5, 2013, complaint against Defendant Holtzclaw in ¶7a.

ii. When she arrived at TJ's, Campbell exited her vehicle and began to walk up to the restaurant when suddenly Holtzclaw violently grabbed Campbell and shoved here toward the bricked restaurant building.

iii. Holtzclaw slammed Campbell's face and head against the brick wall and pressed his crotch area against her backside while exhibiting and obvious erection that Campbell could feel.

iv. Defendant Holtzclaw then handcuffed Campbell and threw her into the back of his police car.  At no time did Campbell threaten Holtzclaw, nor did she make any threatening gesture or exhibit any aggression towards him.

v. Campbell prayed, pleaded, and sobbed as Holtzclaw drove her around Oklahoma City while handcuffed in the backseat of his patrol vehicle through various parts of the city, including a stop behind a store.  Campbell, fearing that she was about to be raped, urinated on herself in a desperate attempt to dissuade Holtzclaw from raping her.  After some time, Holtzclaw took

Campbell, handcuffed and urine-soaked, back to TJ's and released Campbell without filing any charges.

vi. Immediately after Holtzclaw's attack, Campbell returned to OU Medical Center and sought treatment for her injuries, which included cuts and abrasions to her face. One of the nurses called OCPD and demanded that a supervisor come to the hospital to address Holtzclaw's assault on Campbell.

vii. Thereafter, Defendant Bennett of the OCPD arrived and took a statement from Campbell wherein Campbell vividly described the encounter with Holtzclaw including providing the location of where the illegal arrest and detention occurred, how the assault occurred, and the physical characteristics and name of Holtzclaw.

viii. After speaking with Campbell and taking her statement and contact information, Defendant Bennett apologized to Campbell, stated he would "look into" the matter and get back with Campbell and then left the hospital. Clearly, Holtzclaw should have been, at the very least, placed on "desk duty" and "taken off the

street" pending the completion of Bennett's investigation of Campbell's November 5, 2013 complaint.

ix. Campbell was **never** contacted by Bennett or anyone else from the OCPD or OKC.

x. Despite Campbell's documented November 5, 2013, complaint, Defendants covered up Holtzclaw's attack on Campbell and did not investigate, check, or review the various systems and evidence available to them, including but not limited to, Holtzclaw's GPS, computer access, and contact logs.  Further, Defendants did not even question Holtzclaw regarding Campbell's complaint that he violated her constitutional rights by unlawfully detaining, arresting, and physically and sexually assaulting her.

xi. Campbell was in fact the first known African-American female that Holtzclaw sexually assaulted.  Had Defendants responded to her complaint, none of the subsequent 13 African-American females would have been assaulted by Holtzclaw.

14.    Defendants could have and should have prevented Holtzclaw from attacks upon Plaintiff Grate, but deliberately ignored and displayed a pattern, practice and custom of disregarding the previous credible complaints against Holtzclaw discussed above and the available systems, databases, records, information, and evidence readily available for Defendants to track, supervise, and monitor all Holtzclaw's whereabouts, activities and behavior.

15.    Upon information and belief, an investigation into the actions of Holtzclaw did  not begin until on or about May 8, 2014, when the sex crimes division of the OCPD opened an investigation into Holtzclaw, but permitted him to continue working the overnight shift in the predominately African-American neighborhoods of Northeast Oklahoma City without adequate supervision or monitoring.

16.    On or about April 24, 2014, Plaintiff Rosetta Grate encountered Holtzclaw while he was on duty as an OCPD officer.

17.    Holtzclaw made voluntary contact with Plaintiff  Rosetta Grate. After contacting Plaintiff, Holtzclaw arrested her and placed her in the back of his patrol car.  While Plaintiff was in the back of his patrol car, Holtzclaw checked to see whether Plaintiff had warrants and asked Plaintiff several questions, including where she lived.

18.    After she answered all of his questions, Holtzclaw offered Plaintiff a ride home and she accepted.  After arriving at her home, Holtzclaw

let Plaintiff out of the back seat of his patrol car and followed Plaintiff into the house.  Upon entering the house, Holtzclaw made sure nobody else was in the house.  Then Holtzclaw exposed his penis to Plaintiff and forced Plaintiff to perform oral sex on him.

19.    After forcing Plaintiff to perform oral sex on him, Holtzclaw then directed Plaintiff to lay down.  Holtzclaw then forced Plaintiff to have sexual intercourse, placing his penis into her vagina.

20.    After forcing Plaintiff to have perform oral sex on him and raping Plaintiff, Holtzclaw left Plaintiff's house.

21.    Holtzclaw's illegal stops, arrests, excessive force and sexual assaults against Plaintiff took place during his assigned working hours and while the location of his vehicle could have been determined through GPS and his activities could have been monitored via Holtzclaw's contact logs, and radio call-ins.

22.    During the time period that Holtzclaw sexually assaulted Plaintiff, Holtzclaw had committed similar acts on other African American females during a time when OKC had actual and/or constructive notice of the threat Holtzclaw posed to OKC African-Americans in general and African American women specifically in the predominately African-American community he patrolled, including  actual or constructive notice that :

a. On or about December 20, 2013, Holtzclaw sexually assaulted and brutalized Shardayreon Hill, and threatened her with further retaliation if she notified any person or entity of the assault.

b. On or about January 9, 2014, Holtzclaw stalked Hill at her home and exposed his erect penis to her, and pressured her to have sex with him.

c. On or about March 14, 2014, without provocation or probable cause Holtzclaw stopped and arrested Carla Raines.  While Holtzclaw held Raines in custody, Holtclaw illegally searched, sexually assaulted, and used unlawful force against Raines.

d. On or about April 14, without provocation or probable cause, Holtzclaw stopped and arrested a female identified as F.M.  While Holtzclaw held F.M. in his custody, Holtzclaw illegally searched, sexually and physically assaulted, and used unlawful force against F.M.

23. By virtue of the credible complaint made by Campbell and Holtzclaw's history of using excessive force as in the Armstrong matter discussed above (complaints that the City has acknowledged and admitted receiving) which should have caused OKC to open an investigation of Holtzclaw, Defendant OKC knew or had reason to know of the dangerous activities of its servant prior to the time of Holtzclaw's unlawful arrest, search and physical and sexual assault of Plaintiff.

24.     By showing deliberate indifference and displaying a pattern, practice and custom of ignoring the dangers posed by Holtzclaw after receiving information which would alert them to said dangers, and by permitting Holtzclaw to continue to act as an active police officer wearing the uniform and authority of OKC and armed with lethal force, all Defendants named herein are responsible for the illegal arrest, search unlawful force, and sexual and physical assault Plaintiff suffered and are legally liable to Plaintiffs for the damages, injuries and losses they have and will in the future sustain as a result.

25.     Defendants are liable for the actions of Holtzclaw in that Defendants were deliberately indifferent to the threat posed by Holtzclaw and created a targeted danger for African-Americans, including Plaintiffs.

26.     In doing the acts and/or failing to act as described herein, Defendant Officers were acting on the implied and/or actual permission and consent of OCPD and, therefore OKC.

27.     The true names of Defendants John and Jane Does, inclusive are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff will seek to amend this complaint to show the names and capacities of these Defendants when they have been ascertained.  Each of the fictitious named Defendants are responsible, in some manner, for the conduct and liabilities alleged herein.

28.     As the direct consequence of their own actions, Defendants damaged Plaintiff by causing her to suffer extreme physical, mental and emotional distress as well as injuring their constitutional rights and their interest in personal safety and security.

## STATEMENT OF FACTS

29.     Plaintiff incorporates by reference paragraphs 1 through 28 herein as if fully set forth herein.

30.     On or about April 24, 2014, Holtzclaw unlawfully stalked, detained, arrested, searched, and sexually and physically battered Plaintiff Rosetta Grate as follows:

a.     On or about April 24, 2014, Plaintiff Rosetta Grate was walking home alone when Holtzclaw made voluntary contact with her.

b.     Plaintiff was not breaking any city, state or federal laws at the time, nor could she reasonably have been suspected of such.

c.     Holtzclaw made voluntary contact with Plaintiff, arrested her and placed her in the back of his patrol car.  Holdzclaw took Plaintiff's purse and searched it for illegal items.  While Plaintiff was in the back of his patrol car, Holtzclaw checked to see if Plaintiff had any warrants and asked Plaintiff various questions, including where she lived.  Plaintiff answered Holtzclaw's questions to the best of her ability and told him where she lived.

    d.    Holtzclaw then offered Plaintiff a ride home and she accepted. After arriving at her home, Holtzclaw let Plaintiff out of the back seat of his patrol car and followed Plaintiff into the house.  Upon entering the house, Holtzclaw made sure nobody else was in the house.  Then Holtzclaw exposed his penis to Plaintiff and forced Plaintiff to perform oral sex on him, explaining "Its better than the County Jail".

    e.    After forcing Plaintiff to perform oral sex on him, Holtzclaw then directed Plaintiff to lay down.   Holtzclaw then forced Plaintiff to have sexual intercourse, placing his penis into her vagina.

    f.    After forcing Plaintiff to have perform oral sex on him and raping Plaintiff, Holtzclaw left Plaintiff's house.

    g.    Holtzclaw never gave Plaintiff her purse back, as he left it where he had picked her up.

31.    On or about June 18, 2014, Holtzclaw sexually assaulted Jannie Ligons. Ms. Ligons' cousin is Anthony Carter, an Oklahoma City police officer. Based upon information and belief, Defendants would have similarly ignored Ligons' complaint and covered up the fact that Holtzclaw sexuall assaulted Ligons had she not had a relative on the police force.

32.    Had Defendants timely acted upon Campbell's complaint, gathered the abundant information, including Holtzclaw's GPS, contact logs, computer access, other technologies, and other evidence available to them,

questioned Holtzclaw, and submitted that information to the District Attorney for prosecution of Holtzclaw at the time of Holtzclaw's November 5, 2013 assault on Campbell, Holtzclaw's reign of terror on the African-American women and the predominately African-American neighborhoods of Northeast Oklahoma City most assuredly would have ended prior to his illegal stop, arrest, excessive force and sexual assault against Plaintiff and the other 12 victims which he was convicted of committing similar acts.

33.    Because Jannie Ligons' cousin was an OKC police officer, Defendants could no longer ignore, over up, and display deliberate indifference to, as well as show a pattern, practice and custom of ignoring the sexual assaults committed by fellow Oklahoma City police officer Holtzclaw.

34.    Significantly, once Defendants were forced to accept Jannie Ligons' complaint, they then for the first time went back and checked Holtzclaw's readily available GPS, contact logs, computer access and other technologies available to them, and questioned Holtzclaw, resulting in his arrest and prosecution.   In fact, OCPD Captain Dexter Nelson, who was the head of media affairs for OCPD, stated "checking some of our surveillance systems that we have on our officers through GPS tracking, checking his

[Holtzclaw's] previous traffic stops, they [investigators] were able to identify some of the victims."[2]

35.    Defendants knowingly did not submit Demetria Campbell's complaint to the District Attorney or prosecution. Submitting Campbell's complaint would have demonstrated the falsity of the narrative that Ligons was the first to complain.  Likewise, Defendants knowingly promoted (and still promote) in numerous media outlets this false narrative despite Defendants' knowledge that this narrative is a lie.

**FIRST CAUSE OF ACTION:**
**FOURTH AND FOURTEENTH AMENDMENT SEIZURE/DEPRIVATION**
**OF LIBERTY/FAILURE TO SUPERVISE/ UNLAWFUL USE OF FORCE**

36.    Plaintiff incorporates by reference paragraphs 1 through 35 herein as if fully set forth herein.

37.    Title 42 U.S.C. § 1983 provides, in pertinent part: "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party in an action at law…"

38.    OKC, acting under color of state law, and according to policies, practices, and customs of OKC, acted in a manner that was deliberately

---

[2] See, KOKO Channel article Jury Selected in Trial of Former Police Officer Accused of Sexual Assault, http://m.koco.com/news/trial-against-former-oklahoma-city-police-officer-accused-of-sexual-assault-begins-monday/36200534 (last visited April 18, 2016).

indifferent to the danger posed by Holtzclaw, which led to the deprivation of Plaintiff's rights secured by the common law, the laws of the State of Oklahoma, and/or the laws and Constitution of the United States of America.

39.    Pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff had due process protections which include the right to bodily integrity and privacy.

40.    OKC's violations of Plaintiff's constitutional rights was occasioned by the existence of well-settled policies and/or customs and/or the deliberate indifference to the lack of needed policies and/or customs which included:

a.    Failing to properly test and screen applicants for the position of police officer and/or deliberately and intentionally disregarding evidence that an applicant would abuse his or her police power, if hired;

b.    Failing to properly investigate incidents of police abuse of power, and/or intentionally disregarding evidence showing a police officer had abused his or her police power;

c.    Failing to properly discipline officers who abused their police power;

d.    Failing to properly train police officers not to abuse their police power;

e.      Failing to properly supervise, direct and control officers to ensure they did not abuse their police power;

f.      Failing  to properly investigate incidents of racial profiling against African-Americans and/or intentionally disregarding evidence showing that a police officer had targeted and/or racially profiled on or more African-Americans;

g.      Failing to properly train police officers to not racially profile African-Americans;

h.      Failing to properly supervise, direct and control officers to ensure they did not racially profile African-Americans;

i.      Failing to properly supervise, direct and control officers who have a history of abusing their police power against African-Americans;

j.      Failing to promulgate and implement policies and train officers regarding receiving, investigating, and reporting female complaints of sexual assault by OKC officers;

k.      Failing to properly investigate incidents of sexual assault against women, and/or intentionally disregarding evidence showing a police officer had sexually assaulted a woman;

l.      Failing to properly discipline officers who commit sexual assaults against women;

m.   Failing to properly train police officers not to commit sexual assaults against women;

n.   Failing to properly supervise, direct and control officers to ensure OKC police officers did not commit sexual assault against women;

o.   Failing to require male OKC police officers to submit reports anytime male OKC officers have contact with female citizens.

41.   Defendant OKC, as a matter of policy, custom and/or practice, has with deliberate indifference, failed to hire, train, monitor, observe, supervise, investigate, discipline and retain, and exercise control over its police officers concerning the rights of citizens, including Plaintiff.

42.   Upon information and belief, the deliberately indifferent acts and omissions of OKC, in regard to Plaintiff's rights and safety, were the result of the decisions, statements, and/or action of Defendant Citty, who was the policy-making official at OKC at the specific times relevant to Plaintiff's claims.

43.   The acts, omissions, customs, and policies of OKC, as described herein, were the direct and proximate cause of, and moving force behind, Holtzclaw's illegal stops, arrests, searches, and physical and sexual assault of Plaintiff.

## SECOND CAUSE OF ACTION:
## FOUTH AND FOURTEENTH AMENDMENT SEIZURE/DEPRIVATION OF LIBERTY
### As to Defendants Holtzclaw and Citty
### 42 U.S.C. §1983

44.     Plaintiff incorporates by reference paragraphs 1 through 43 herein as if fully set forth herein.

45.     Holtzclaw acted under color of law at the time that he arrested Plaintiff, as described above, as well as at the time he detained Plaintiff in his police car and performed invasive searches of Plaintiff's persons and touched their bodies, as described above, in that Holtzclaw was acting as an Oklahoma City Police Officer, in full uniform, operating a marked police car, and was purportedly acting to enforce Oklahoma and Oklahoma City law pursuant to the authority granted to him by OKC.  Defendant Citty is responsible for the hiring, training, firing, promoting and disciplining of OKC officers.

46.     Holtzclaw's requiring Plaintiff to remain in his presence while Holtzclaw conducted unlawful searches of Plaintiff's persons, without probable cause and during which Plaintiff reasonably believed she was not free to leave, effected a detention of, and unlawfully seized the person of Plaintiff.

47.     The actions taken by Holtzclaw as herein described exhibited a deliberate indifference to the constitutionally-protected rights of Plaintiffs on th part of Defendants Holtzclaw and Citty, as said actions were taken under

color or of law and pursuant to the authority granted to Citty as the OKC Police Chief and to Holtzclaw as an OKC police officer.

48.     As a direct and proximate result of the above0described unlawful actions, Plaintiff suffered a prohibited deprivation of her liberty in that her person were unlawfully seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

**49.**     Consequently, Plaintiff is entitled to damages and other relief as set forth herein.

### THIRD CAUSE OF ACTION:
### FOURTH AND FOURTEENTH AMENDMENT UNLAWFUL USE OF FORCE
### As to Defendants Holtzclaw and Citty
### 42 U.S.C. §1983

50.     Plaintiff incorporates by reference paragraphs 1 through 49 herein as if fully set forth herein.

51.     Holtzclaw acted under color or law at the time that he arrested Plaintiff, as described above, as well as at the time he detained Plaintiff in his police car and performed invasive searches of Plaintiff's person and touched her body, as described above, in that Holtzclaw was acting as an OKC Officer, in full uniform, operating a marked police car, and was purportedly acting to enforce Oklahoma and Oklahoma City law pursuant to the authority granted to him by OKC.  Defendant Citty is responsible for the hiring, training, firing, promoting and disciplining of OKC officers.

52.     Holtzclaw's conduct, in effecting his invasive searches of Plaintiffs, constituted an unlawful use of force in that Holtzclaw subjected Plaintiff to unwanted physical contact which was not objectively reasonable in light of the facts and circumstances confronting Holtzclaw.

53.     The actions taken by Holtzclaw as described exhibited a deliberate indifference to the constitutionally- protected rights of Plaintiffs on th part of Defendants Holtzclaw and Citty, as said actions were taken under color or of law and pursuant to the authority granted to Citty as the OKC Police Chief and to Holtzclaw as an OKC police officer.

54.     As a direct and proximate result of the above-described unlawful actions, Plaintiff suffered a prohibited deprivation of her liberty in that her person was unlawfully seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

**55.**     Consequently, Plaintiff is entitled to damages and other relief as set forth herein.

### FOURTH CAUSE OF ACTION:
### CONSPIRACY TO INTERFERE WITH FOURTH AND FOURTEENTH AMENDMENT RIGHTS
### As to All Defendants
### 42 U.S.C. § 1985(3)

**"If two or more persons in any State or Territory conspire… for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; … the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."**

56.    Plaintiff incorporates by reference paragraphs 1 through 45 herein as if fully set forth herein.

57.    Title 42 U.S.C. § 1985(3) prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

58.    The conspiracy occurred among Defendants Citty, Bennett, Gregory, and John and Jane Doe between November 5, 2013 and June 18, 2014.

59.    The conspiracy involved them meeting, discussing, agreeing, and conspiring to cover up the fact that on November 5, 2013, Demetrial Campbell complained to Defendant Bennett that she had been illegally detained, arrested, victimized by unlawful force, and sexually assaulted by Holtzclaw, and that Defendants Citty, Bennett. Gregory, and John and Jane Doe had knowingly failed and apparently refused to take any action as a result of Campbell's complaint, other than Bennett apologizing for Holtzclaw's behavior.

60.    It was only after Jannie Ligons complained of being illegally detained, arrested, victimized, and sexually assaulted by Holtzclaw, on June 18, 2014, that Defendants were forced to take Holtzclaw off the street and

conduct the full-fledged investigation they should have conducted after Campbell and others had complained.

61.    The conspiracy was motivated by an invidious discriminatory animus against African-Americans in general, and African-American females in particular, who were painted with the stereotypical brush of bias and prejudice that their constitutionally protected right to bodily integrity does not matter and need not be recognized, investigated, protected, or prosecuted, particularly when the victimizer is a white member of the OKC police department.

62.    The discriminatory animus against African-Americans in general, and African-American females in particular, was demonstrated by Defendants' deliberate failure to conduct an investigation into the complaint of Demetria Campbell and others and Defendants apparent refusal to take Holtzclaw off the streets pending an investigation even once an investigation was initially under way.   An investigation that Defendants knowingly and with deliberate indifference, failed to initiate until after they were forced to do so, because Holtzclaw's last victim, Jannie Ligons, had a familial relationship with Oklahoma City police officer, Anthony Carter.

63.    Prior to Holtzclaw's criminal prosecution there was a meeting of the minds, a conspiracy, and agreement among Defendants Citty, Bennett, Gregory, and John and Jane Doe to cover up rather than report and present to

the District Attorney that before any of the 13 African-American females (including Plaintiff herein) that Holtzclaw was ultimately prosecuted for sexually assaulting, that Demetria Campbell was Holtzclaw's first African-American female victim.  Holtzclaw should have been prosecuted for sexually assaulting 14 African-American females, not 13.   The reason Defendants covered up Demetria Campbell as Holtzclaw's first African-American female victim is because Defendants were fully aware that such disclosure would eviscerate Defendants' widely distributed (but false) media reports that Defendants take such allegations very seriously.  Clearly, Defendants did not take Campbell's complaint seriously, because had they done so, none of Holtzclaw's subsequent 13 victims would have been sexually assaulted.

**FIFTH CAUSE OF ACTION:**
**FOURTH AND FOURTEENTH AMENDMENT FAILURE TO SUPERVISE**
**As to all Defendants**
**42 U.S.C. § 1983**

64.   Plaintiff incorporates by reference paragraphs 1 through 63 herein as if fully set forth herein.

65.   Defendants knew that Holtzclaw had, prior to unlawfully stopping, arresting, searching, and physically and sexually assaulting Plaintiff, committed at least two acts of unlawful force as described above and at least one act of unlawfully stopping, arresting, seizing, and physically and sexually assaulting an African-American female, as described above.

66.   Alternatively Defendants should have known of the multiple unconstitutional stops, searches, seizures, and physical and sexual assaults Holtzclaw committed as described above by simply utilizing the multitude of monitoring tools at Defendants' disposal.  Had they utilized such resources, Defendants would have been aware of Holtzclaw's unlawful, un-duty whereabouts and activities.  These resources  included, but were not limited to Holtzclaw's readily available GPS, contact logs, warrant and name database searches, and radio call-in records.

67.   Holtzclaw's GPS, contact logs, warrant database searches, and radio call-in records were readily available to be reviewed by Holtzclaw's supervisors. It was the review of these records by Detective Kim Davis and other OKC officers that helped lead to the eventual arrest and prosecution of Defendant Holtzclaw.

68.   Despite prior reports that Holtzclaw committed unlawful acts of violence against African-Americans, Defendants, as Holtzclaw's supervisors, deliberately allowed Defendant Holtzclaw to patrol the predominately African-American neighborhoods of Northeast Oklahoma City, alone, without supervision, during the sparsely populated overnight hours and failed to supervise and monitor his activities.

69.   By deliberately ignoring Holtzclaw's prior unconstitutional behavior, Defendants set into motion a series of events that they knew or

should have known would cause Holtzclaw to deprive Plaintiff of her constitutional rights.

70. The failure on the part of Defendants to supervise Holtzclaw demonstrated that they were deliberately indifferent to the rights of Plaintiff.

71. As a direct and proximate result of the above-described unlawful actions, Plaintiff suffered a prohibited deprivation of her liberty in that her person was unlawfully seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution

72. Consequently, Plaintiff is entitled to damages and other relief as set forth herein.

**SIXTH CAUSE OF ACTION**
**FOURTH AND FOURTEENTH AMENDMENT MUNICIPAL LIABILITY-**
**RATIFICATION**
**As to All Defendants**
**42 U.S.C. § 1983**

73. Plaintiff incorporates by reference paragraphs 1 through 72 herein as if fully set forth herein.

74. Defendants deprived Plaintiff of her Fourth and Fourteenth Amendment rights under the United States Constitution.

75. Defendant Citty was the final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants, ratified such acts and the bases for them. Defendant Citty, the final policymaker, knew of and specifically approved the acts of Defendants.

76.     Defendant Citty, the final policymaker, had determined that the acts of Defendants were "within policy."

77.     By reason of the aforementioned acts and omissions, Plaintiff has suffered devastating and substantial mental, emotional, physical, and financial damages.

78.     Accordingly, Defendants are liable to Plaintiff for damages and other relief as set forth herein.

**SEVENTH CAUSE OF ACTION**
**FOURTH AND FOURTEENTH AMENDMENTS**
**MUNICIPAL LIABILITY-FAILURE TO TRAIN**
**As to All Defendants**
**42 U.S.C. § 1983**

79.     Plaintiff incorporates by reference paragraphs 1 through 78 herein as if fully set forth herein.

80.     Defendants deprived Plaintiff of her Fourth and Fourteenth Amendment rights under the United States Constitution.

81.     The training policies of OKC were non-existent an/or inadequate to train its police officers how to handle the usual and recurring situations with which they must effectively navigate.  Specifically, training was totally inadequate, without limitation, with respect to :

a.     Receiving complaints of sexual assault by fellow OKC police officers;

    b.  Investigating complaints of sexual assaults by fellow OKC residents;

    c.  Disciplining OKC police officers for sexual assault upon OKC residents;

    d.  Prosecuting OKC police officers for sexual assaults upon OKC residents.

 82. Defendant OKC was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately.

 83. The failure of Defendant OKC to promulgate, implement, and/or adequately train, supervise, and discipline its officers caused the deprivation of Plaintiff's rights; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

 84. By reason of the aforementioned acts and omissions, Plaintiff has suffered devastating and substantial mental, emotional, physical and financial damages.

 85. Accordingly, Defendants are liable to Plaintiff for damages and other relief as set forth herein.

**EIGHT CAUSE OF ACTION**
**UNLAWFUL SEARCH AND SEIZURE**
**As to all Defendants**
**Okla. Const. art. II, §30**

86.     Plaintiff incorporates by reference paragraphs 1 through 85 herein as if fully set forth herein.

87.     At the time of Holtzclaw's unlawful stops, arrests, searches of Plaintiffs, Defendant OKC employed Holtzclaw in the capacity of Police Officer, granting Holtzclaw the authority to act under color of law in the name of the City of Oklahoma City to enforce the statutes and laws of the City of Oklahoma City and the State of Oklahoma.

88.     Further, at the time that Holtzclaw was committing his unlawful stops, arrests, and searches against Plaintiffs, Defendant Holtzclaw was acting within the scope of his employment as an employee and agent for Defendant OKC.

89.     Pursuant to that authority, Defendant Holtzclaw unlawfully detained Plaintiff, against her will, by impermissibly ordering Plaintiff to enter his police car while Holtzclaw effected unlawful and invasive searches, of Plaintiff's person, without probable cause or a warrant authorizing either the seizure or search of Plaintiff's person.

90.     Pursuant to the authority granted by Defendant OKC, Defendant Holtzclaw restrained Plaintiff, without due process, with Plaintiff's full knowledge that they were being restrained.

91.    As a direct and proximate result of the above-referenced unlawful actions of Defendants, Plaintiffs suffered a prohibited deprivation of their rights to be free from unlawful search and seizures under Okla. Const. art. II, § 30, and suffered damages fro which Defendants are liable.

92.    Consequently, Plaintiffs are entitled to damages and other relief as set forth herein.

## PRAYER FOR RELIEF

Plaintiff prays that this Court will grant the following:

1.    All actual damages suffered by Plaintiffs, including those emanating from physical pain, mental anguish and emotional distress in excess of seventy five thousand dollars ($75,000.00)

2.    Damages for violations of Plaintiff's constitutional rights.

3.    Punitive damages to the extent permitted by law.

4.    A declaration that the detention and search of Plaintiff's person, as described herein, were unconstitutional as a matter of law.

5.    Injunctive relief requiring Defendant OKC to promulgate and implement policies and procedures to prevent such deprivations of constitutional rights in the future, and requiring Defendant OKC to train OKC officers regarding receiving, investigating, and reporting sexual assaults against women by OKC officers and employees.

6.     Injunctive relief requiring Defendant OKC to create an investigative unit to specifically receive, investigate, report allegations of sexual abuse by OKC officers and employees directly to the District Attorney, and make reports public within 90 days.

7.     Injunctive relief requiring Defendant OKC to equip all of its officers with body cameras that are unable to be tampered with or shut off by the officer wearing said camera.

8.     An award of attorney's fees pursuant to 42 U.S.C. § 1988(b) and any other applicable provision of law.

9.     Any and all further relief that this Court deems just and equitable.

Respectfully submitted,

s/ Nkem A. House
Nkem A. House, OBA #21219

Rhone & House, P.A.
527 N.W. 23rd Street, Suite 200
Oklahoma City, OK 73103
405.602.5393 (telephone)
405.602.5390 (facsimile)
houselawfirm@gmail.com (email)
ATTORNEY FOR PLAINTIFF

**Attorney's Lien Claimed**
**Jury Trial Demanded**